

☐ ORIGINAL

BY FAX

1   Harry P. "Hap" Weitzel, Esq. (SBN 149934)
    E-mail: weitzelh@pepperlaw.com
2   Jeffrey M. Goldman (SBN 233840)
    E-mail: goldmanj@pepperlaw.com
3   **PEPPER HAMILTON LLP**
    4 Park Plaza, Suite 1200
4   Irvine, California 92614
    Telephone: 949.567.3500
5   Fax: 949.863.0151

6   Attorneys for Plaintiff
7   ADT SECURITY SERVICES, INC.

8

9                   **UNITED STATES DISTRICT COURT**

10          **FOR THE DISTRICT OF NORTHERN CALIFORNIA**

11

12  ADT SECURITY SERVICES, INC.,          Civil Action No. _____

13                  Plaintiff,

                                          **PLAINTIFF ADT SECURITY SERVICES,**
14          vs.                           **INC.'S:**

15  PINNACLE SECURITY LLC;                **(1) NOTICE OF MOTION AND MOTION**
    PINNACLE SECURITY CA, LP;             **TO COMPEL ENFORCEMENT OF FRCP**
16  KELLY E. WALKER; AND STEVEN P.        **45 DOCUMENT SUBPOENA DIRECTED**
    ZOLMAN,                               **TO GOLDEN GATE CAPITAL, IN**
17                                        **CONNECTION WITH ACTION PENDING**
                    Defendants.           **IN NORTHERN DISTRICT OF ILLINOIS;**
18
                                          **AND**
19
                                          **(2) MEMORANDUM OF POINTS AND**
20                                        **AUTHORITIES IN SUPPORT THEREOF**

21                                        [filed concurrently with Declarations of Robert
                                          Hickok, Jeffrey M. Goldman, and Noah
22                                        Robbins; Request for Judicial Notice; and
                                          [Proposed] Order]
23
                                          Hearing Date: TBD
24                                        Hearing Time: TBD
                                          Location: TBD
25

26

27

28

    ADT SECURITY SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ENFORCEMENT OF FRCP 45 SUBPOENA
    DIRECTED TO GOLDEN GATE CAPITAL, IN CONNECTION WITH ACTION PENDING IN NORTHERN DISTRICT OF ILLINOIS;
                              MEMO. OF POINTS AND AUTHORITIES

    #15848345 v1

1    **TO THE HONORABLE COURT, ALL PARTIES, AND ALL ATTORNEYS OF**

2    **RECORD:**

3      **PLEASE TAKE NOTICE** that, on a date, time, and location to be determined upon

4    assignment to a Department in the United States District Court for the Northern District of

5    California, Plaintiff ADT Security Services, Inc. ("ADT") will, and hereby does, move the Court

6    pursuant to FRCP 37 and 45, as well as Local Rule 37, for an order compelling third party Golden

7    Gate Capital to provide all documents responsive to the subpoena served by ADT in connection

8    with an action pending in the United States District Court for the Northern District of Illinois,

9    captioned *ADT Security Services, Inc. v. Pinnacle Security, LLC; Pinnacle Security CA, LP; Kelly*

10   *E. Walker; and Steven P. Zolman*, Civil Action No. 1:10-cv-07467. Depending upon the

11   procedures of the assigned Department, the date, time, and location for the hearing will be

12   selected by either the Court or ADT. Once that date, time, and location are set, ADT will serve

13   an appropriate notice on all parties to the action and Golden Gate Capital.

14     In particular, the Motion seeks the following:

15     (i) an order compelling Golden Gate Capital to provide supplemental responses to the

16   subpoena, without objections, agreeing to produce all responsive documents in its possession,

17   custody, or control.

18     (ii) an order establishing that Golden Gate Capital has waived the attorney client privilege

19   and attorney work product doctrine by failing to provide sufficient information to ADT to allow it

20   to assess the applicability of such privilege and/or protection. In the alternative, if the Court

21   permits any privileged objection(s) to remain, Plaintiff requests that the Court order Golden Gate

22   Capital to comply with FRCP 45(d)(2) and require Golden Gate Capital to provide a privilege log

23   that numbers and describes each document or communication as to which privilege is claimed

24   and state the basis of the claim; and

25     (iii) an order compelling Golden Gate Capital to provide all documents in its possession,

26   custody, or control that are responsive to Plaintiff's subpoena by no later than 10 court days

27   following the issuance of said order.

28

#15848345 v1

1    The Motion is based upon this Notice of Motion and Motion, the Supporting

2  Memorandum of Points and Authorities; the concurrently filed declarations of Robert L. Hickok

3  and Jeffrey M. Goldman and exhibits thereto; the concurrently filed Request for Judicial Notice;

4  the concurrently filed Proposed Order; all documents within the Court's file; and any argument

5  provided at the hearing upon this Motion.

6    In accordance with Federal Rule of Civil Procedure 37(a)(2)(B) and Local Rule 37-1,

7  counsel for ADT certifies that its counsel met and conferred telephonically and in writing with

8  Golden Gate Capital's counsel for the purpose of attempting to resolve the disputed discovery

9  issues, but such efforts did not result in resolution of said disputes.

10    **Special Notice re: Anticipated Motion to Compel Enforcement of FRCP 30(b)(6)**

11  **Subpoena**: ADT has also served Golden Gate Capital with an FRCP 30(b)(6) deposition

12  subpoena, and Golden Gate Capital has refused to produce a deponent. Ordinarily, ADT would

13  have filed, concurrently with this motion, a motion to compel that deposition to take place.

14  However, the matter of whether ADT can take this deposition is presently before the Court in the

15  United States District Court for the Northern District of Illinois, as part of a dispute among the

16  parties as to the number of depositions each side can take. Should that Court rule in ADT's favor

17  – and that ruling is anticipated to occur in early April 2012 – ADT will file the motion to compel

18  enforcement with its FRCP 30(b)(6) deposition subpoena, and reserves all rights related to that

19  subpoena.

20

21    Date: March 22, 2012                          **PEPPER HAMILTON LLP**

22                                                  By: _____

23                                                  Jeffrey M. Goldman
                                                    Attorney for Plaintiff
24                                                  ADT SECURITY SERVICES, INC.

25

26

27

28

3

#15848345 v1

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2     I.     **STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(3)).**

3          (i)  Should Golden Gate Capital be required to provide supplemental responses, without

4     objections, to ADT's FRCP 45 subpoena, along with all responsive documents?

5          (ii) Has Golden Gate Capital waived the attorney-client privilege and attorney work

6     product doctrine, and, if not, should Golden Gate Capital be required to produce a privilege log?

7     II.    **INTRODUCTION.**

8          Golden Gate Capital calls itself:

9          *"The strategic source of capital for companies exploiting the forces of change in the*

10    *global economy."*

11         *See* www.goldengatecap.com (last visited February 5, 2012).  Unfortunately, one of the

12    companies it owns, Pinnacle Security, LLC ("Pinnacle") does not merely "exploit" consumers –

13    it outright deceives them into dropping ADT and signing up with Pinnacle for home and

14    commercial security services by, *inter alia*, claiming to be from or associated with ADT or using

15    an unlawfully obtained list of ADT customers.  Such misconduct caused ADT to file an action

16    against Pinnacle, and others, in the United States District Court for the Northern District of

17    Illinois for unfair competition and related claims.

18         Given all this, the issue here is whether Golden Gate Capital can disobey a subpoena that

19    ADT issued out of this District Court in connection with that Illinois action, and refuse to

20    produce documents.

21         The answer is, no, for at least two reasons:

22         ***First***, the mere 11 document requests seek information directly relevant to the claims in

23    the Illinois action, and Golden Gate Capital does not deny having possession, custody, or control

24    over responsive documents (either in its own files, or in Pinnacle's files).

25         ***Second***, Golden Gate Capital's objections are baseless.  For example:

26         •    the unsupported "vagueness" objections ask the Court to believe that a

27              sophisticated private equity firm does not understand terms clearly referencing

28              contracts entered into by its portfolio companies.

4

1    • the bald privilege objections fail to identify any documents being withheld, in
2       violation of FRCP 45 and interpretive Ninth Circuit case law, resulting in waiver,
3       or, at the very least, justifying an Order mandating that a privilege log be
4       produced.
5    • The "burdensome" and "duplicative" objections, based solely on the claim that
6       Pinnacle also has some of the requested documents, are simply improper under
7       relevant law. *See, e.g., LG Display Co. v. Chi Mei Optroelectronics Corp.*, Civil
8       No. 08cv2408-L (POR), 2009 U.S. Dist. LEXIS 6362, at *7 (S.D. Cal. Jan. 28,
9       2009) (overruling objection to plaintiff's FRCP 45 subpoena to defendant's parent
10      company, Sony, seeking "duplicative" documents that "are readily attainable from
11      the defendants in the underlying matter" because plaintiff entitled to test the
12      "accuracy and completeness" of defendant's discovery responses).

13   Thus, ADT requests that the Court determine that the objections are meritless; that
14   documents, and further responses omitting objections, be produced; and that either the attorney-
15   client privilege and attorney work product doctrine be deemed waived or that Golden Gate
16   Capital be required to honor its obligation to provide a privilege log.

17   III.    **STATEMENT OF FACTS.**

18       A.    **ADT and Pinnacle's Relationship, and the Facts Leading Up to ADT's Action**
19            **Against Pinnacle.**

20   ADT is the nation's leading provider of home security services.

21   Pinnacle, on the other hand, is rated "F" by the Better Business Bureau, with over 1,200
22   complaints lodged against it. *See* www.bbb.org/utah/business-reviews/burglar-alarm-systems-
23   dealers-monitoring-and-service/pinnacle-security-in-orem-ut-11000043 (last visited Feb. 6,
24   2012); Declaration of Jeffrey M. Goldman, ¶ 4; Ex. 6 (website printout). Indeed, since 2009,
25   Pinnacle is or has been under investigation by several states' attorneys general (including in
26   Illinois, New York, Missouri, and Ohio), as well as the Utah Division of Consumer Protection
27   and the Utah Division of Occupational and Professional Licensing for unfair and deceptive
28

1  business practices. *See id.*; *see also* Request for Judicial Notice ("RJN"), Ex. A (First Amended

2  Complaint) at ¶¶ 132-148.

3      On November 19, 2010, ADT filed suit against Pinnacle, alleging unfair, unlawful, and/or

4  fraudulent business activities that impacted ADT, as well as the violation of a 2007 agreement

5  between ADT and Pinnacle. RJN, Ex. A (First Amended Complaint). For example, ADT alleged

6  that:

7      • ADT acquired and serviced alarm contracts from a company located near

8      Pinnacle's headquarters in Utah, APX Alarm Security Solutions, Inc. ("APX").

9      Pinnacle employees got jobs at APX and obtained passwords to APX's confidential

10     customer database, which contained the customer information of those accounts

11     acquired by ADT. The employees then quit, returned to Pinnacle, and used those

12     passwords to unlawfully access and obtain the confidential account information.

13     Pinnacle than targeted those customers by falsely telling them they needed to sign a

14     new contract with Pinnacle because their ADT contracts were going to expire. *See*

15     Ex. A (First Amended Complaint) at ¶¶ 27 – 48.

16     • Pinnacle illegally lied to ADT customers, nationwide, in order to convince them to

17     switch from ADT to Pinnacle for their home security needs. *Id.* at ¶¶ 51 – 128.

18     • Pinnacle breached its Master Account Purchase Agreement with ADT, as well as

19     the First Amendment thereto (collectively, the "MAPA"). *Id.* at ¶¶ 149 – 162. The

20     MAPA created a framework work by which ADT would purchase home security

21     customer accounts. In essence, Pinnacle would sign up customers to long term

22     alarm monitoring contracts, typically three years, and then sell the monitoring

23     contracts to ADT.[1] *See* Declaration of Robert L. Hickok Decl., ¶ 3; Ex. 1 (Depo.

24     Transcript of Kelly Walker, Pinnacle's C.E.O.) at 303:12-16. To ensure that

25

26     _____

       [1] The particular provisions and terms of the MAPA are protected by a Confidentiality

27     Provision. Pinnacle (and, thus, Golden Gate Capital, who is specifically referenced in the
       MAPA) are in possession of that agreement, and ADT will provide a copy to the Court Under

28     Seal if and when requested by the Court.

1      Pinnacle had signed up these customers legally, Pinnacle was required under the

2      MAPA to provide ADT with recorded "Welcome Calls", a standard practice in the

3      industry. *Id.* at 290:9-16. Each new alarm customer received a call from Pinnacle

4      customer service, and the customer had to confirm he or she understood the terms

5      of the alarm monitoring contract. *Id.* at 69:7-14. Pinnacle breached its obligation

6      to provide ADT with these "Welcome Calls" and owes ADT certain penalties under

7      the MAPA, which ADT seeks as damages in the pending action.

8      This and related misconduct required ADT to file suit against Pinnacle (and others) in the

9   United States District Court for the Northern District of Illinois, Civil Action No. 1:10-cv-07467,

10   alleging several causes of action, focusing on Pinnacle's unfair competition, misappropriation of

11   trade secrets, breaches of contract, and alleging related common law and statutory torts. *See* RJN,

12   Ex. A.

13      Unfortunately, discovery has not been easy in the Illinois action and Pinnacle has refused

14   to provide information related to its relationship to Golden Gate. For example, it has become

15   clear that Pinnacle is withholding several responsive documents, including (i) weekly

16   "dashboard" reports (i.e., reports on the operational and financial metrics of Pinnacle) provided to

17   Golden Gate Capital; and (ii) e-mails to or from Kelly Walker, Pinnacle's C.E.O. – indeed,

18   despite testifying that he is a prolific e-mailer (*see* Hickok Decl., ¶ 3; Ex. 1 at 39:9-40:2),

19   Pinnacle has only produced a handful of emails from Mr. Walker. *See* Hickok Decl., ¶ 6. Most

20   recently, ADT has been forced to undergo substantial meet-and-confer efforts to ensure

21   documents are being produced by Pinnacle, and in late January 2012, ADT had to file a Motion to

22   compel Pinnacle to produce a privilege log. RJN, Ex. B (Motion to Compel). Like Golden Gate

23   Capital, Pinnacle chose to withhold documents on boilerplate privilege grounds without providing

24   any detail to enable ADT to assess the validity of Pinnacle's claim.

25

26

27

28

#15848345 v1

B. **Golden Gate Capital Owns Pinnacle, Has Access to Responsive Documents, Yet Refuses to Produce Said Documents.**

Golden Gate Capital is no ordinary third party; it actually owns and exercises substantial control over Pinnacle.[2] Hickok Decl., ¶ 3; Ex. 1 (Depo. Transcript of Kelly Walker) at 49:16-52:3.

---

[2] Golden Gate Capital states, without explanation, that there is no entity called "Golden Gate Capital." *See* Hickok Decl., Ex. 4 (Responses and Objections to Subpoena). This is inconsistent with at least the following the facts:

(i) ADT's subpoena was accepted by Jim O'Connor, at the office address listed on Golden Gate Capital's website, who claimed to be the company's Chief Compliance Officer. *See* Hickok Decl., ¶ 5; Ex. 3 (proof of service on last page of Rule 45 subpoena);

(ii) Golden Gate Capital retained Kirkland & Ellis to represent itself and issue objections to the subpoena on its behalf;

(iii) the C.E.O. of Pinnacle has testified under oath that "Golden Gate Capital" owns Pinnacle;

(iv) Golden Gate Capital's website calls the company "Golden Gate Capital" numerous times. *See, e.g.,* Screenshot below, on p. 11;

(v) if notice is required to be provided by ADT under the MAPA, that notice must be provided to "Golden Gate Capital";

(vi) the Better Business Bureau states that "Golden Gate Capital" owns Pinnacle. *See* Goldman Decl., ¶ 4; Ex. 7 (BBB Printout); and

(vii) at least one company, Jill Acquisition LLC, has represented to the United States District Court for the Eastern District of Texas that it is a "subsidiary of Jill Holdings LLC, which is a subsidiary of Jill Topco LLC, which is a subsidiary of Multi–Channel Opportunity Holdings LLC, *which is owned by Golden Gate Capital*" (emphasis added) (*See* RJN, Ex. D (J. Jill's Corporate Disclosure Statement)).

The above facts show that Golden Gate Capital must respond to written discovery. *Carolina Cas. Ins. Co. v. Elliot*, Case No. 09-CV-66, 2010 U.S. Dist. LEXIS 134079, *6-7 (E.D. Wis. Dec. 7, 2010) (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)) (quotes omitted) (where a party, "EE&S," disclaimed "existing" as a "legal entity," but, rather, was a "shorthand name" for a grouping of persons, EE&S must nevertheless respond to written discovery because it was an "association"– i.e., a "mere collection of individuals who have joined together for a common purpose" – and, "the Federal Rules clearly envision entities like EE&S being subjected to discovery via a deposition")

8

#15848345 v1

1      Golden Gate Capital calls itself a "leading private equity firm with $12 billion in

2  committed capital under management." *See* http://goldengatecap.com/about.shtml (last visited

3  Feb. 5, 2012). Its "approach to investing and adding value to our portfolio companies is founded

4  upon the rigorous application of fact-based analysis to understand, drive and ***implement strategic***

5  ***and operational change*." *Id.* (emphasis added). Here, Golden Gate Capital "understands" the

6  business of Pinnacle and the contracts into which Pinnacle enters, and "implements strategic and

7  operational change" at Pinnacle. For example, Golden Gate Capital and Pinnacle's relationship

8  has been described as an "investment" relationship; an "ownership" relationship (*see* Hickok

9  Decl., ¶ 3; Ex. 1 (Depo. Of Kelly Walker) at 25:21-26:1, 51:12-52:3); and a "partnership" (*see*

10  *id.*, ¶ 4; Ex. 2 (ADT Ex. 45, Pinnacle press release)). Pinnacle's C.E.O. even testified, under

11  penalty of perjury, that after Golden Gate Capital acquired Pinnacle for approximately $30

12  million plus potential earn-out amounts, Golden Gate Capital had significant involvement in the

13  company's business practices:

14      Q. From . . . May 2008 when Golden Gate Capital made this investment in

15      Pinnacle, what involvement did Golden Gate, through its representatives, have in

16      the management of the business of Pinnacle?

17      **A. We have our quarterly board meetings, we have a weekly dashboard**

18      **report, and they were very influential in assisting and raising the debt facility**

19      **that allowed Pinnacle to retain the assets in which we were creating [i.e.**

20      **residential alarm monitoring agreements].**

21      * * *

22      Q. ... [W]hen did that board [of directors of Pinnacle] come into existence?

23

24      It should also be noted that, to the extent Golden Gate Capital is challenging ADT and this
Court to divine what, if any, other corporation, LLC, or partnership acquired Pinnacle, there is no

25  "Golden Gate Capital" registered as a fictitious business name in the San Francisco
Registrar/Recorder's office. *See* Declaration of Jeffrey M. Goldman, ¶ 3. Thus, the use of the

26  fictitious business name "Golden Gate Capital" in San Francisco violates California Business &
Professions Code, sections 17910 and 17915.

27

28

1    **A. When Golden Gate acquired the corporation.**

2    * * *

3    Q. Who were members of the board at this time?

4    **A. Myself, Chris Munday, Jesse Adams, Prescott Ashe, John Gilligan, and I**

5    **believe Joe Pretlow.**

6    Q. All right. And there were quarterly meetings of this board; is that correct?

7    **A. Yes.**

8    Q. Were minutes kept of those board meetings?

9    **A. Yes.**

10   Q. Who kept those minutes?

11   **A. I believe it was John Gilligan.**

12   Q. And I assume those board meeting minutes are available, in existence today?

13   **A. Absolutely.**

14   Q. Okay. Let's just go through the names. Yourself we've talked about, Chris

15   Munday we've talked about. Jesse Adams, who was Jesse Adams?

16   **A. Jesse and Prescott are both founders of Golden Gate. Pretlow is an**

17   **investor with Golden Gate, and John Gilligan was the representative of**

18   **Golden Gate that oversaw Pinnacle at the time. I don't recall his specific**

19   **title.**

20   Q. And has the composition of that board changed over time?

21   **A. I don't believe so, no.**

22   Q. … [I]s John Gilligan still the one who oversees Pinnacle for Golden Gate, or

23   has that been replaced by Chris Munday?

24   **A. That has been replaced by Chris Munday.**

25   * * *

26   Q. With what frequency do you report to Chris Munday?

27   **A. I would say every two weeks.**

28

10

#15848345 v1

1    Q. And when Chris Munday was CEO of Pinnacle, with what frequency was

2    Pinnacle reporting to Golden Gate Capital?

3    **A. Similar.**

4    * * *

5    Q. You also told us about a weekly dashboard report.  What is that weekly

6    dashboard report?

7    **A. It's an e-mail that goes to Golden Gate every Monday showing some**

8    **operating and financial metrics of the company.**

9    Hickok Decl., ¶ 3; Ex. 1 (Depo. Of Kelly Walker) at 51:12-57:25.  The specific nature and

10   provisions of those earn-out incentives to Pinnacle's founders are clearly relevant to the

11   underlying litigation.  ADT alleges that Pinnacle executives knowingly permitted its sales

12   representatives to engage in unlawful activities in order to obtain the earn-out incentives and/or

13   sales goals set by Golden Gate Capital.  Moreover, documents recently produced by Pinnacle

14   indicate that, in fact, Pinnacle did have sales targets set by Golden Gate that Pinnacle desired to

15   achieve at all costs.[3]

16       Moreover, Golden Gate Capital's website dedicates an entire page to Pinnacle, as well as

17   a link to Pinnacle's own website:



#15848345 v1

11

*See* http://goldengatecap.com/company_pinnacle.shtml (last visited March 22, 2012).

Given their relationship, ADT served a Rule 45 document subpoena (*see* Hickok Decl., ¶ 5; Ex. 3 (FRCP 45 subpoena)), as well as a FRCP 30(b)(6) deposition subpoena on Golden Gate Capital. Golden Gate Capital refused to comply with either subpoena.[4] *Id.* at ¶ 5, Ex. 4 (Responses and Objections to Subpoenas).

Despite owning and being intricately involved in Pinnacle's operations, Golden Gate Capital has refused to respond to 11 straightforward document requests. Indeed, Golden Gate recently transferred many of Pinnacle's responsibilities to another home security that it owns, Devcon. *See* Declaration of Noah Robbins, ¶ 3; Ex. 8 (Hafen Deposition Transcript) at 51:19-25. As part of that transition, Steve Hafen, formerly Chief Operating Officer at Pinnacle is now CEO at Devcon (after serving as COO of Devcon). *Id.* at 7:25-8:3. Notwithstanding the nominal change in employer, Mr. Hafen confirmed at his deposition that there were quarterly Board of Directors meetings for Pinnacle and that Golden Gate Capital representatives comprised nearly all of the Board of Directors. *Id.* at 67:8-17. Mr. Hafen also testified that PowerPoint presentations were prepared for these meetings and would be circulated in connection with the meetings. *Id.* at 69:8-18.

Although ADT informed Golden Gate Capital that it would file this motion, Golden Gate Capital refused to offer the production of any documents at all. *See* Hickok Decl., ¶ 6; Ex. 5 (meet-and-confer correspondence). ADT now respectfully requests that the Court compel Golden Gate Capital to produce all documents that are relevant and responsive to ADT's subpoena.

IV.   **ARGUMENT.**

A.   **The FRCP's Broad Standard of Relevance Applies to Third Party Discovery**.

The Federal Rules "subject a nonparty witness to the same scope of discovery as that person would be as a party to whom a request for documents and other materials is addressed

---

[4] Golden Gate Capital did *not* object to the specific deposition topics in that FRCP 30(b)(6) notice, which mirror the document requests at issue here. Any objections to those topics are thus waived. Thus, Golden Gate Capital's incongruous position is that its representative will testify about the matters at issue, but will not produce documents regarding the same.

12

pursuant to Rule 34." 9A Wright, Miller & Marcus, *Federal Practice and Procedure: Civil* §

2452 (3d ed. 2008) (citing Advisory Committee Notes to 1991 Amendments of Rule 45); *United*

*States ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002) (subjecting non-party

witness to same scope of discovery as party to litigation).  Accordingly, a party may obtain

discovery from a nonparty regarding any matter that is relevant to any party's claim or defense –

i.e., information that appears "reasonably calculated to lead to the discovery of admissible

evidence." Fed. R. Civ. P. 26(b)(1).  The Court may grant the request of a party serving a

subpoena for an order compelling the production of responsive documents at any time.  Fed. R.

Civ. P. 45(c)(2)(B).

> B.   **Full Text of Discovery Requests, Responses, and Reasons for Production**
>      **(Civil L.R. 37-2).**

ADT hereby provides *verbatim* recitations of the discovery requests and responses at

issue, as well as (i) the reasons why ADT is entitled to the requested discovery; (ii) how the

requirements of FRCP 26(b)(2) are satisfied; and (iii) why Golden Gate Capital's objections lack

merit.[5]

**REQUEST NO. 1:**

All documents regarding Pinnacle's negotiation, execution, and performance under the

Master Account Purchase Agreement with ADT or the First Amendment to the Master Account

Purchase Agreement from January 1, 2007 to present.

_____

[5] Golden Gate Capital included two pages of "General Responses and Objections" in its
response to ADT's subpoena and made informal general objections in written correspondence.
Hickok Decl., ¶ 5, Ex. 4.  However, such "general objections" are improper, and should be
deemed waived. *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 651 (D. Kan. 2006)
("general objections" made without any "meaningful effort to show the application of any such
theoretical objection to any request for discovery" are deemed waived and not considered by the
Court, even where the objecting party has also made additional individualized objections to each
discovery request).

Also, Golden Gate Capital had 12 days to respond to the subpoena, so its objection that it
lacked sufficient time to respond should be overruled. *See* Schwarzer, Tashima, and Wagstaff,
Fed. Civ. Pro. Before Trial, ¶ 11:2276-77 (Rutter Group 2011) (FRCP 45 only requires
"reasonable" time between service of subpoena and date set for compliance, and "[s]ervice of
subpoenas at least 10 days before the deposition or production is customary . . . .").

#15848345 v1

1     **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

2         Golden Gate Capital objects to this request as it is unduly burdensome and duplicative of

3 discovery that has already been propounded on and responded to by Defendant Pinnacle Security

4 LLC ("Pinnacle"). Golden Gate Capital objects as ADT has access to the documents requested.

5 Golden Gate Capital objects to this request to the extent that it calls for the production of

6 information protected by the attorney-client privilege and work product doctrine. Golden Gate

7 Capital objects to the terms "Master Account Purchase Agreement" and "First Amendment to the

8 Master Account Purchase Agreement" as vague and ambiguous.

9     **REASONS WHY ADT IS ENTITLED TO THE REQUESTED DOCUMENTS:**

10        ADT seeks damages for Pinnacle's violation of the MAPA. RJN, Ex. A (First Amended

11 Complaint) at ¶¶ 149 – 162. Therefore, the requested documents are both "reasonably calculated

12 to lead to the discovery of admissible evidence," (Fed. R. Civ. P. 26(b)(1)), and directly relevant

13 to ADT's claims. Notably, Golden Gate Capital does *not* object to this document request on

14 relevance grounds.

15        There is also no reason to limit this request under FRCP 26(b)(2).

16       *First*, the discovery is not "***unreasonably*** cumulative or duplicative," nor can it "be

17 obtained from some other source that is more convenient, less burdensome, or less expensive."

18 *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added). In fact, notwithstanding Pinnacle's refusal

19 to provide many of the responsive documents, ADT is entitled to test the "accuracy and

20 completeness of the defendants' discovery responses" with an FRCP 45 subpoena. *See LG*

21 *Display Co. v. Chi Mei Optroelectronics Corp.*, Civil No. 08cv2408-L (POR), 2009 U.S. Dist.

22 LEXIS 6362, at *7 (S.D. Cal. Jan. 28, 2009) (overruling objection to plaintiff's FRCP 45

23 subpoena to Sony (defendant's parent company) as seeking "duplicative" documents that "are

24 readily attainable from the defendants in the underlying matter" because plaintiff is entitled to

25 test the "accuracy and completeness" of defendant's discovery responses); *Viacom Int'l, Inc. v.*

26 *YouTube, Inc.*, No. C 08-80129 SI, 2008 U.S. Dist. LEXIS 79777, *10 (N.D. Cal. Aug. 18, 2008)

27 ("[T]here is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to

28 be in defendants' possession."); *Software Rights Archive, LLC v. Google, Inc.*, Misc. No. 09-

14

#15848345 v1

1  017-JJF, C.A. No. 2:07-CV-511 (CE), C.A. No. CV08-03172RMW, 2009 U.S. Dist. LEXIS
2  43835, *8 (D. Del. May 21, 2009) ("[T]here is no absolute rule prohibiting a party from seeking
3  to obtain the same documents from a non-party as can be obtained from a party, nor is there an
4  absolute rule providing that the party must first seek those documents from an opposing party
5  before seeking them from a non-party.") (citations omitted). Here, unfortunately, Pinnacle
6  refused to produce several responsive documents that will also be in Golden Gate Capital's
7  possession, such as weekly "dashboard" reports or e-mails from Pinnacle's C.E.O. *See* Hickok
8  Dec., ¶ 6. This, alone, defeats Golden Gate Capital's mistaken argument that it can resist
9  producing documents in the possession of Pinnacle, merely because ADT could conceivably ask
10  Pinnacle for that documentation as well.

11  Golden Gate Capital also has an interest in this controversy by virtue of its ownership
12  interest in Pinnacle, which is another factor in favor of ordering production. *Software Rights*
13  *Archive, LLC*, 2009 U.S. Dist. LEXIS 43835, *7 (whether or not "the putative non-party actually
14  has an interest in the outcome of the case" should be "consider[ed] . . . in deciding whether
15  production should be ordered . . . ."; held, where third party was a shareholder in one of the
16  parties, and production should be compelled) (citation omitted).

17  Indeed, given its stake in Pinnacle, Golden Gate Capital should have its own internal
18  documents assessing, *inter alia*, the impact of the MAPA on its acquisition of, as well as the
19  performance of, Pinnacle. The MAPA, alone, accounts for millions of dollars sought by ADT in
20  its action against Pinnacle; it is inconceivable that a 70% shareholder in Pinnacle would not have
21  its own documentation on the issue. Moreover, to the extent Pinnacle now asserts that certain
22  provisions of the MAPA are ambiguous and/or unenforceable, the manner in which it
23  contemporaneously presented its understanding of these terms to its corporate parent is relevant.
24  As another example, Pinnacle's C.E.O. testified that there were reports sent at least every two
25  weeks to Golden Gate Capital regarding Pinnacle's performance. Surely, Golden Gate Capital
26  created some of its own internal documents regarding those reports. Additionally, Golden Gate
27  Capital paid at least $30 million for a company that has been the subject of multiple
28  investigations by several states' investigative authorities for engaging in unfair competition; it

15

1     stands to reason Golden Gate Capital will have non-duplicative documents in their possession

2     assessing Pinnacle's business practices.

3         ***Second***, the:

4         burden or expense of the proposed discovery . . . [does not] outweigh[] its likely

5         benefit, considering the needs of the case, the amount in controversy, the parties'

6         resources, the importance of the issues at stake in the action, and the importance

7         of the discovery in resolving the issues.

8     Fed. R. Civ. P. 26(b)2)(C)(iii). The requested documents only span a 5 year period, and only

9     relate to one particular agreement – the MAPA, which is of direct relevance to ADT's Illinois

10     action. *See LG Display Co.*, 2009 U.S. Dist. LEXIS 6362, at *7 (citing *App. of Radio Corp. of*

11     *Am.*, 13 F.R.D. 167 (S.D.N.Y. 1952) (18 years is not burdensome)). Additionally, there are

12     millions of dollars at stake in this action, and Golden Gate Capital does not claim to have

13     financial difficulty in responding to the request. Indeed, Golden Gate Capital made at least a $30

14     million dollar investment in Pinnacle, and it is unfathomable that the company lacks its own

15     documents regarding that investment and Pinnacle's performance.

16         Furthermore, Golden Gate Capital's objections are not well taken.

17         ***First***, the above rationale defeats the boilerplate objection that that the discovery is

18     "unduly burdensome and duplicative of discovery" or that ADT "has access to the documents

19     requested." Notably, Golden Gate Capital makes no effort to show how documents in its

20     possession would be duplicative of those possessed and/or produced by Pinnacle or how it would

21     be unduly burdened by responding to the request.

22         ***Second***, Golden Gate Capital's bald privilege and work-product objections are

23     insufficient as a matter of law; likewise, the failure to detail what documents are being withheld,

24     and why, also constitutes a waiver. *See Burlington N. and Santa Fe Ry. Co. v. U.S. Dist. Court*

25     *for Dist. of Mont.*, 408 F.3d 1142, 1148 (9th Cir. 2005) (failure to produce privilege log can

26     result in waiver of privilege); *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 410 (C.D. Cal.

27     2005); *Eureka Fin. Corp. v. Hartford Acc. and Indem. Co.*, 136 F.R.D. 179, 182 (E.D. Cal. 1991)

28     ("Whether a responding party states a general objection to an entire discovery document on the

#15848345 v1

1   basis of privilege, or generally asserts a privilege objection within an individual discovery

2   response, the resulting 'blanket objection' is decidedly improper."). ADT has no idea what

3   documents are being withheld, or why. This mirrors the efforts of Golden Gate Capital's

4   company, Pinnacle, to stymie ADT's ability to assess privilege claims. *See* RJN, Ex. B. Thus,

5   the Court should find that the privilege and work product protection has been waived or, at the

6   very least, that Golden Gate Capital must produce a privilege log.

7       ***Third***, Golden Gate Capital's objection to the terms "Master Account Purchase

8   Agreement" and "First Amendment to the Master Account Purchase Agreement" as "vague and

9   ambiguous" is particularly meritless. A "party objecting to discovery as vague or ambiguous has

10  the burden to show such vagueness or ambiguity by demonstrating that 'more tools beyond mere

11  reason and common sense are necessary to attribute ordinary definitions to terms and phrases.'"

12  *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1030 (E.D. Cal. 2010) (citations omitted); *Milinazzo v.*

13  *State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007) ("A party properly objecting on the[]

14  [basis that a request is vague] must explain the specific and particular ways in which a request is

15  vague . . . ."). Golden Gate Capital cannot substantiate its objection here. It acquired Pinnacle at

16  or around the same time that the MAPA was executed, is specifically referenced in the MAPA,

17  takes regular part in Pinnacle board meetings, and exercises board discretion over the company.

18  Its website boasts that it engages in "rigorous application of fact-based analysis to understand,

19  drive and implement strategic and operational change" in the companies in which it invests, such

20  as Pinnacle. Golden Gate Capital simply cannot claim ignorance as to the MAPA.

21          **REQUEST FOR PRODUCTION NO. 2:**

22          All documents related to damages that ADT claims as a result of Pinnacle's breaches of

23  the Master Account Purchase Agreement with ADT or the First Amendment to the Master

24  Account Purchase Agreement from January 1, 2007 to present.

25          **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

26          Golden Gate Capital objects to this request because it fails to identify with specificity the

27  documents sought, is unduly burdensome, is vague and ambiguous, calls for speculation and calls

28  for a legal conclusion. Golden Gate Capital objects to the terms "Master Account Purchase

17

1    Agreement" and "First Amendment to the Master Account Purchase Agreement" as vague and

2    ambiguous.

3    **REASONS WHY ADT IS ENTITLED TO THE REQUESTED DOCUMENTS:**

4         Please see ADT's explanation as to why it is entitled to documents responsive to Request

5    for Production Number 1.

6    **REQUEST FOR PRODUCTION NO. 3:**

7         All documents regarding Pinnacle's storage, preservation, or loss of Welcome

8    Calls in relation to the Master Account Purchase Agreement with ADT or the First Amendment to

9    the Master Account Purchase Agreement from January 1, 2007 to present.

10   **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

11        Golden Gate Capital objects to this request as it is unduly burdensome and

12   duplicative of discovery that has already been propounded on and responded to by Pinnacle.

13   Golden Gate Capital objects as the term "Welcome Calls" is vague and ambiguous.  Golden Gate

14   Capital objects to the terms "Master Account Purchase Agreement" and "First Amendment to the

15   Master Account Purchase Agreement" as vague and ambiguous.

16   **REASONS WHY ADT IS ENTITLED TO THE REQUESTED DOCUMENTS:**

17        Please see ADT's explanation as to why it is entitled to documents responsive to

18   Request for Production Number 1.

19        Furthermore, given Golden Gate Capital's multi-million dollar investment in

20   Pinnacle, it would likely have (and does not deny having) documents pertinent to Pinnacle's

21   storage, preservation, or loss of Welcome Calls.  Without divulging confidential information from

22   the MAPA, Pinnacle's production, or lack thereof, of "Welcome Calls" for certain customers is a

23   central issue in this litigation.  Though Pinnacle claims that its failure to abide by its contractual

24   obligation was due to a "catastrophic" event, the evidence adduced to date reflects that the alleged

25   failure results only from Pinnacle's refusal to devote appropriate resources to implementing a

26   phone system consistent with its needs.  ADT is entitled to know whether Golden Gate Capital

27   took part in that decision and its input regarding same.

28

18

#15848345 v1

1   Finally, Golden Gate Capital knows full well what "Welcome Calls" refers to, as that

2   phrase is directly referenced in the MAPA, about which Golden Gate Capital has full knowledge,

3   and, moreover, is a well-known and commonly accepted term within the home security industry,

4   in which Golden Gate now owns, at least, two participants.

5   **REQUEST FOR PRODUCTION NO. 4:**

6   All documents that discuss or relate to Grant Thornton or Targus serving as an

7   independent analyst of the verification bounce and pre-sale bounce provisions in the First

8   Amendment to the Master Account Purchase Agreement from January 1, 2007 to present.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

10   Golden Gate Capital objects to this Request as unduly burdensome, vague and

11   ambiguous.  Golden Gate Capital objects to the terms "Grant Thornton," "Targus," "Master

12   Account Purchase Agreement" and "First Amendment to the Master Account Purchase

13   Agreement" as vague and ambiguous.

14   **REASONS WHY ADT IS ENTITLED TO THE REQUESTED DOCUMENTS:**

15   Please see ADT's explanation as to why it is entitled to documents responsive to Request

16   for Production Number 1.

17   The verification bounce and pre-sale bounce provisions in the First Amended MAPA

18   required Pinnacle to cross-check its customer lists with those of ADT to confirm that Pinnacle

19   was not stealing ADT's customers and then reselling them back to ADT.  Grant Thornton and

20   Targus were the independent auditors hired to conduct the bounce process.  ADT and Pinnacle's

21   respective and joint statements to these entities regarding the scope of work and process to be

22   used is relevant to the parties' competing interpretations of the obligations under the MAPA.

23   Moreover, the parties prior course of conduct with respect to their performance of their respective

24   obligations under the MAPA is relevant.  To the extent Pinnacle communicated with Golden Gate

25   Capital regarding the selection of the independent analyst and provided explanation as to the role

26   in the performance of the MAPA, it is relevant.

27

28

19

#15848345 v1

1   **REQUEST FOR PRODUCTION NO. 5:**

2        All monthly, quarterly or annual reports or analyses that Golden Gate Capital

3   prepared for shareholders that contain a discussion of the investment in Pinnacle from January 1,

4   2007 to present.

5        **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

6        Golden Gate Capital objects to this Request as overly broad, unduly burdensome,

7   vague and ambiguous, not relevant, and not reasonably calculated to lead to the discovery of

8   admissible evidence.  Golden Gate Capital objects to the extent the request seeks confidential

9   information.

10        **REASONS WHY ADT IS ENTITLED TO THE REQUESTED DOCUMENTS:**

11        Please see ADT's explanation as to why it is entitled to documents responsive to Request

12   for Production Number 1.

13        Furthermore, as explained *supra*, these documents are relevant because ADT believes that

14   Pinnacle's potential "earn out" was pegged to hitting certain sales figures.  ADT is thus entitled to

15   review Golden Gate Capital's reports or analyses regarding Pinnacle's performance, as well as

16   Golden Gate Capital's decision to invest in Pinnacle, because such documents would bear upon

17   Pinnacle's sales efforts and methods of achieving desired sales levels.  For example, Golden Gate

18   Capital's assessment of how the company it acquired was performing is also relevant to whether

19   Pinnacle altered its business methods to address criticisms or comments made by Golden Gate

20   Capital.

21        This request is not duplicative of any other discovery issued in this case (hence the

22   lack of objection on duplication grounds), and the benefit to be obtained from reviewing such

23   documents outweighs the scant effort it would take for Golden Gate Capital to merely print up its

24   reports and analyses of Golden Gate Capital's investment in Pinnacle.  With respect to Golden

25   Gate Capital's "confidentiality" objection, (i) Golden Gate Capital provides no explanation as to

26   why the requested information would be confidential; and (ii) assuming that any "confidential"

27   documents exist, they can be produced subject to designation under the Protective Order presently

28

20

#15848345 v1

1   in place in the Illinois action or an Order entered by this Honorable Court. *See* RJN, Ex. C

2   (Protective Order).

3   **REQUEST FOR PRODUCTION NO. 6:**

4   All documents relating to any governmental lawsuit, subpoena, investigation, or complaint

5   concerning Pinnacle's sales practices from January 1, 2007 to present.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

7   Golden Gate Capital objects to this request as it is unduly burdensome and duplicative of

8   discovery that has already been propounded on and responded to by Pinnacle. Golden Gate

9   Capital objects as ADT has access to the documents requested. Golden Gate Capital objects to

10   this request to the extent that it calls for the production of information protected by the attorney-

11   client privilege and work product doctrine.

12   **REASONS WHY ADT IS ENTITLED TO THE REQUESTED DOCUMENTS:**

13   Pinnacle has been subjected to at least three states' attorneys general for unsavory business

14   practice akin, and in some respects identical, to those alleged by ADT. *See*

15   www.bbb.org/utah/business-reviews/burglar-alarm-systems-dealers-monitoring-and-

16   service/pinnacle-security-in-orem-ut-11000043 (last visited Feb. 5, 2012). Pinnacle's controlling

17   shareholder's assessment of those matters, and any other lawsuits, subpoenas, investigations, or

18   complaints concerning Pinnacle's sales practices, will bear upon whether or not it believed

19   Pinnacle to actually have been acting improperly. For example, if Golden Gate Capital

20   performed its own investigation or audit of Pinnacle's sales practices and concluded that

21   Pinnacle's sales model was improper, such information would clearly be relevant to ADT's

22   allegations. While Golden Gate Capital has objected on privilege/work product grounds, it has

23   not provided any basis for ADT to analyze that claim. Notably, Pinnacle has *not* objected to this

24   request on relevance grounds.

25   This request is not duplicative of any other discovery issued in this case (nor is there an

26   objection to that effect), and the benefit to be obtained from reviewing such documents outweighs

27   the scant effort it would take for Golden Gate Capital to merely print up its documents relating to

28

21

#15848345 v1

1   any governmental lawsuit, subpoena, investigation, or complaint concerning Pinnacle's sales

2   practices from January 1, 2007 onward.[6]

3      Finally, please see ADT's reasons why ADT is entitled to the documents responsive to

4   Document Request Number 1 for an explanation as to why the invocation of the attorney-client

5   privilege and work product doctrine is insufficient here.

6      **REQUEST FOR PRODUCTION NO. 7:**

7      All documents relating to any investigation of, or allegation against, any Pinnacle sales

8   representative from January 1, 2007 to present.

9      **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

10     Golden Gate Capital objects to this request as it is unduly burdensome and duplicative of

11   discovery that has already been propounded on and responded to by Pinnacle. Golden Gate

12   Capital objects as ADT has access to the documents requested. Golden Gate Capital objects to

13   this request to the extent that it calls for the production of information protected by the attorney-

14   client privilege and work product doctrine.

15     **REASONS WHY ADT IS ENTITLED TO THE REQUESTED DOCUMENTS:**

16     Please See ADT's reasons why it is entitled to the documents responses to Document

17   Request Number 6. The same rationale expressed therein applies equally to any documents that

18   involve internal investigations of Pinnacle's sales representatives.

19     **REQUEST FOR PRODUCTION NO. 8:**

20     All documents relating to an allegation that Pinnacle employees, agents, or sales

21   representatives acquired a Customer Database of APX and/or ADT from January 1, 2007 to

22   present.

23

24

25

26     [6] Ironcially, to the extent it is extremely burdensome for Golden Gate Capital to locate and
27   produce all documents regarding legal complaints concerning Pinnacle's sales practices, this is, in
     and of itself, evidence supporting the notion that ADT's complaints of unfair sales practices is
28   valid.

#15848345 v1

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

2        Golden Gate Capital objects to this request as it is unduly burdensome, duplicative of

3    discovery that has already been propounded on and responded to by Pinnacle, vague and

4    ambiguous. Golden Gate Capital objects as ADT has access to the documents requested. Golden

5    Gate Capital objects to this request to the extent that it calls for the production of information

6    protected by the attorney-client privilege and work product doctrine.

7        **REASONS WHY ADT IS ENTITLED TO THE REQUESTED DOCUMENTS:**

8        ADT seeks relief against Pinnacle in connection with Pinnacle's employees theft of

9    customer information from a database maintained by APX (another home security company from

10   which ADT periodically purchases accounts), and using that information to improperly target

11   ADT customers. *See* RJN, Ex. A (First Amended Complaint) at ¶¶ 27 – 48. Therefore, the

12   requested documents are directly relevant to ADT's claims. Notably, Golden Gate Capital does

13   *not* contend that this request seeks irrelevant information.

14       Please also see ADT's reasons why FRCP 26(B)(2) does not mandate limiting this

15   request, as well as why Golden Gate Capital's objections are meritless, set forth in ADT's

16   analysis as to Document Request Number 1.

17       **REQUEST FOR PRODUCTION NO. 9:**

18       All documents relating to Adam Scrivner from January 1, 2007 to present. 231:1-

19   9.

20       **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

21       Golden Gate Capital objects to this request as it is unduly burdensome, duplicative

22   of discovery that has already been propounded on and responded to by Pinnacle, vague and

23   ambiguous.

24       **REASONS WHY ADT IS ENTITLED TO THE REQUESTED DOCUMENTS:**

25       Please see ADT's explanation as to why it is entitled to documents responsive to Request

26   for Production Number 1.

27       Adam Scrivner was one of the Pinnacle sales representatives who illegally hacked into

28   APX's protected electronic customer database and used the information he stole to target ADT's

1    customers. See *supra* Section III.A. Pinnacle allegedly conducted an internal investigation into

2    Mr. Scrivner's hacking. *See* Declaration of Robert L. Hickok Decl., ¶ 3; Ex. 1 (Depo. Transcript

3    of Kelly Walker, Pinnacle's C.E.O.) at 231:1-9. He is also the subject of an ongoing investigation

4    by the United States Attorney's Office for the District of Arizona. His conduct as a Pinnacle

5    employee is directly related to ADT's claims.

6         **REQUEST FOR PRODUCTION NO. 10:**

7         Notes or minutes of any meeting where Pinnacle was discussed from January 1, 2007 to

8    present.

9         **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

10        Golden Gate Capital objects to this request as it is unduly burdensome, duplicative

11   of discovery that has already been propounded on and responded to by Pinnacle, vague and

12   ambiguous. Golden Gate Capital objects as ADT has access to the documents requested. Golden

13   Gate Capital objects to this request to the extent that it calls for the production of information

14   protected by the attorney-client privilege and work product doctrine.

15        **REASONS WHY ADT IS ENTITLED TO THE REQUESTED DOCUMENTS:**

16        As Kelly Walker testified, board meeting minutes were and are maintained by

17   Golden Gate Capital representatives. *See* Hickok Decl., ¶ 3; Ex. 1 (Depo. of Kelly Walker) at

18   55:15-56:21. If Pinnacle was discussed during those board meetings, FRCP 26's broad standard

19   of relevance dictates that the minutes or notes from said meetings be produced to ADT. Notably,

20   Golden Gate Capital does not contend that this request seeks irrelevant information.

21        **REQUEST FOR PRODUCTION NO. 11:**

22        Any reports, statements or memorandum of any kind to, from or about Pinnacle

23   from January 1, 2007 to present.

24        **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

25        Golden Gate Capital objects to this request as overly broad, unduly burdensome,

26   not relevant, and not reasonably calculated to result in admissible evidence.

27

28

#15848345 v1

1    **REASONS WHY ADT IS ENTITLED TO THE REQUESTED DOCUMENTS:**

2    The underlying action touches on nearly every facet of Pinnacle's operation, from

3    its history of pervasive unethical sales practices, to its obligations to ADT under the MAPA, to its

4    refusal to invest in the infrastructure to ensure compliance with same. As demonstrated above,

5    Golden Gate is intricately involved with Pinnacle, and appears to have made financial demands

6    and profitability requirements that influenced Pinnacle's decision to forgo ethical sales and its

7    obligations to ADT in order to increase revenue at all costs and remain in Golden Gate's good

8    graces. As a result, any reports, statements, or memoranda concerning Pinnacle in Golden Gate's

9    possession are likely to be relevant to these claims and defenses in this action.

10   V.    **CONCLUSION.**

11   ADT respectfully requests that the Court order Golden Gate Capital to provide further

12   responses to ADT's subpoena agreeing to produce all responsive documents in its possession,

13   custody, or control. Furthermore, given the lack of sufficient information to assess the validity of

14   Golden Gate Capital's privilege claims, ADT requests that the Court determine that either (i)

15   Golden Gate Capital has waived the attorney-client privilege and the protections of the attorney

16   work product doctrine; or (ii) Golden Gate Capital must produce an appropriate privilege log. In

17   either event, ADT requests that the Court order the production of documents to occur with 5

18   business days of the order being issued.

19   Date: March 22, 2012                    **PEPPER HAMILTON LLP**

20

21                                           By: _____

22                                           Jeffrey M. Goldman
                                             Attorney for Plaintiff
23                                           ADT SECURITY SERVICES, INC.

24

25

26

27

28

#15848345 v1